1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8    JASON EVAN BROWNE,                    )
                                           )
9              Petitioner,                 )        3:07-cv-0290-RCJ-RAM
                                           )
10   vs.                                   )        **ORDER**
                                           )
11   E.K. McDANIEL, *et al.*,              )
                                           )
12             Respondents.                )
     _____/

13

14          This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a

15   Nevada State prisoner, represented by counsel.  This action comes before the Court on the merits of the

16   first amended petition.

17   **I. Background and Procedural History**

18          On December 3, 1993, an indictment was filed in the Eighth Judicial District Court for

19   the State of Nevada, charging petitioner with murder with the use of a deadly weapon.  (Exhibit 2).[1]  The

20   incident involved petitioner beating his wife to death with a baseball bat.  (*Id.*).  The matter proceeded

21   to jury trial.  On January 25, 1996, the jury returned a guilty verdict, finding petitioner guilty of first

22   degree murder.  (Exhibit 33).  On February 1, 1996, the jury sentenced petitioner to death.  (Exhibit 42).

23   The judgment of conviction was filed on March 8, 1996.  (Exhibit 44).

24

25   _____

26          [1]  The exhibits referenced in this order were filed with the amended petition and are found in the
     Court's record at Docket #21-27.

1      Petitioner appealed the judgment of conviction to the Nevada Supreme Court. (Exhibit
2  48). On February 26, 1997, the Nevada Supreme Court entered an opinion upholding the judgment of
3  conviction and sentence of death. (Exhibit 53). Remittitur issued on July 2, 1997. (Exhibit 54).

4      On October 14, 1997, petitioner filed a post-conviction habeas petition in state district
5  court. (Exhibit 55). Through counsel, petitioner filed a supplemental brief on October 14, 1998.
6  (Exhibit 64). On February 10, 1999, the district court granted the petition in part, granting petitioner a
7  new penalty hearing, and denying the remainder of the petition. (Exhibit 72). The State appealed the
8  district court's order. (Exhibit 74). On April 27, 2000, the Nevada Supreme Court filed its order
9  affirming the district court's ruling and remanding the case for a new penalty phase. (Exhibit 82).
10  Remittitur issued on May 23, 2000. (Exhibit 83).

11      On June 24, 2004, petitioner entered into a sentencing agreement with the State. (Exhibit
12  103). The State stipulated to withdraw the death penalty, with the understanding that petitioner waived
13  sentencing by a jury and an evidentiary hearing regarding mental retardation, and allow the court to
14  sentence him. (Exhibit 103). On August 20, 2004, petitioner was sentenced to life without the
15  possibility of parole. (Exhibit 104). A new judgment of conviction was filed on August 25, 2004.
16  (Exhibit 106).

17      Petitioner appealed his conviction and sentence. (Exhibit 108). On October 18, 2005,
18  the Nevada Supreme Court filed its order of affirmance. (Exhibit 113). Remittitur issued November
19  15, 2005. (Exhibit 114).

20      On March 22, 2006, petitioner filed another notice of appeal, seeking to appeal from
21  judgment. (Exhibit 116). The Nevada Supreme Court issued an order dismissing the appeal on May 26,
22  2006. (Exhibit 124). The Nevada Supreme Court explained that it lacked jurisdiction over the appeal
23  because petitioner had already appealed from the judgment, and the Court had already affirmed the
24  judgment of conviction. (*Id.*). Remittitur issued on June 21, 2006. (Exhibit 125).

25

26

2

1    On April 25, 2006, petitioner filed a second state habeas petition.  (Exhibit 121).  The

2    state district court dismissed the petition on July 13, 2006.  (Exhibit 128).  The court filed findings of

3    fact and conclusions of law on August 17, 2006.  (Exhibit 130).  Petitioner filed a motion for

4    reconsideration, which was denied by the state district court.  (Exhibits 129, 134, 135).

5    On August 29, 2006, petitioner filed a *pro per* appeal with the Nevada Supreme Court.

6    (Exhibit 133).  The Nevada Supreme Court filed its order of affirmance on May 24, 2007.  (Exhibit 138).

7    Remittitur issued on June 28, 2007.  (Exhibit 140).

8    On June 22, 2007, petitioner dispatched his *pro per* federal habeas corpus petition to this

9    Court.  (Docket #1-2, at p. 1).  On November 29, 2007, the Federal Public Defender was appointed to

10   represent petitioner.  (Docket #6).  On November 21, 2008, a first amended petition was filed by counsel

11   for petitioner.  (Docket #19).

12   Respondents moved to dismiss certain claims in the first amended petition on grounds

13   of non-exhaustion and untimeliness.  (Docket #29).  By order filed July 29, 2009, this Court denied the

14   motion to dismiss and directed respondents to file an answer to the first amended petition.  (Docket #44).

15   Respondents filed an answer on October 14, 2009.  (Docket #40).  Petitioner, through counsel, filed a

16   reply on March 15, 2010.  (Docket #46).

17   **II.  Federal Habeas Corpus Standards**

18   The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

19   provides the legal standard for the Court's consideration of this habeas petition:

20
21
22
An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a State court shall not be granted
with respect to any claim that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim –

23
(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

24
25
26

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

4

1    **III.  Discussion**

2        **A.  Ground One**

3            Petitioner alleges: "The State committed prosecutorial misconduct when the prosecutor,

4    despite repeated objections and admonitions from the court, made improper, unethical and inflammatory

5    remarks during opening statement.  The State's conduct violated Browne's right to due process and a

6    fair trial guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.  (First

7    Amended Petition, Docket #19, at p. 10).

8            A court "review[s] claims of prosecutorial misconduct 'to determine whether the

9    prosecutor's remark so infected the trial with unfairness as to make the resulting conviction a denial of

10   due process.'"  *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000) (quoting *Hall v. Whitley*, 935 F.2d

11   164, 165 (9th Cir. 1991)); *see also Darden v. Wainwright*, 477 U.S. 168 (1986).  The Nevada Supreme

12   Court addressed this claim and ruled that:

13               In Garner v. State, 78 Nev. 366, 371, 374 P.2d 525, 528 (1962), we held
                 that during opening statements, a prosecutor can outline the theory of the
14               case and propose facts he intends to prove, as long as he states the facts
                 fairly.
15
                 We reviewed the statements Jason [petitioner] opposes and conclude that
16               they do not amount to prosecutorial misconduct.  To the contrary, the
                 prosecutor was merely informing the jury that he intended to prove that
17               the murder was premeditated.  The only statement that could conceivably
                 be considered improper was referring to Jason as "a selfish and cruel
18               man"; however, we find that this comment did not rise to the level of
                 misconduct requiring reversal.
19
20   (Exhibit 53, at pp. 6-7).  The factual findings of the state court are presumed correct.  28 U.S.C. §

21   2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

22   to, or involved an unreasonable application of, clearly established federal law, as determined by the

23   United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

24   in light of the evidence presented in the state court proceeding.  This Court finds that the prosecutor's

25   comments did not so infected the trial with unfairness as to make the resulting conviction a denial of due

26   process.  This Court will deny habeas relief as to Ground One.

5

1

**B.  Ground Two**

Petitioner alleges: "The district court's jury instruction defining premeditation improperly failed to define deliberate as a separate and distinct element of first degree murder thereby minimizing the State's burden of proof in violation of Browne's due process right guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution."  (First Amended Petition, Docket #19, at p. 11).  In the reply, petitioner relies on *Byford v. State*, 116 Nev. 215, 993 P.2d 700 (2000) and *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007), for his argument that giving the *Kazalyn*[2] instruction at his trial was automatic error.  (See Docket #46, at pp. 10-11).

In *Byford v. State*, the Nevada Supreme Court observed that, while willful first-degree murder required that the killer "actually intend to kill," not every killing was intended.  993 P.2d at 713. The *Byford* Court held that Nevada courts should no longer instruct the jury that "a killing resulting from premeditation is willful, deliberate and premeditated murder."  *Id.*  Because such a *Kazalyn* instruction blurred the lines between first and second degree murder, the Nevada Supreme Court held that first degree murder requires proof beyond a reasonable doubt of the separate and three distinct elements of willfulness, deliberation, and premeditation.  *Id.* at 713-14.  The Nevada Supreme Court later held that *Byford* affected only those convictions that were not final at the time *Byford* was decided.  *See Garner v. State*, 116 Nev. 770, 788, 6 P.3d 1013, 1025 (2000), *overruled on other grounds by Sharma v. State*, 118 Nev. 648, 56 P.3d 868 (2002).

In *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007), the Ninth Circuit held that a petitioner's "federal constitutional right to due process was violated by use of the *Kazalyn* instruction because it relieved the State of its burden of proving every element of first degree murder beyond a reasonable doubt."  *Polk,* 503 F.3d at 909.  The court in *Polk* further ruled that the Nevada Supreme Court's holding in *Byford* applied retroactively, to cases predating the *Byford* decision.  *See Polk v. Sandoval*, 503 F.3d

---

[2]  This instruction first appears in Nevada's case law in *Kazalyn v. State*, 108 Nev. 67, 75, 825 P.2d 578, 583 (1992).

6

at 911.  Further, in *Polk v. Sandoval*, the Ninth Circuit ruled that when a *Kazalyn* instruction is used, petitioner is entitled to relief only if "'the error had a substantial and injurious effect or influence in determining the jury's verdict,'" thus applying the *Brecht* harmless error analysis.  *Polk v. Sandoval*, 503 F.3d at 911 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Most recently, the Nevada Supreme Court issued the published opinion in *Nika v. State*, 198 P.3d 839 (Nev. 2008).  In *Nika v. State*, the Nevada Supreme Court held that *Byford* announced "a change in state law," rather than a "clarification" of such law, as had been suggested in the *Polk v. Sandoval* decision.  *Nika v. State*, 198 P.3d at 849-850, 859.  The Nevada Supreme Court found that: "Until *Byford*, we had not required separate definitions for 'willfulness,' 'premeditation,' and 'deliberation' when the jury was instructed on any one of those terms."  *Id*. at 849.  Stressing that it had previously approved of the *Kazalyn* instruction and rejected challenges to that instruction on the grounds that it failed to distinguish between premeditation and deliberation, the court held that the *Byford* decision was thus unforeseeable.  *Id*.  The *Kazalyn* instruction therefore correctly reflected Nevada law before the *Byford* decision.  *Id.* at 850.  The Nevada Supreme Court held that, as a matter of due process, the change in the law effected in *Byford* applied to convictions that were not yet final at the time of the change.  *Id*.  On the issue of retroactive application of *Byford* to cases that were final before it was decided, the Nevada Supreme Court held that *Byford* has no retroactive application.  *Id*. at 850-851, 859.

Based on this language from *Nika*, respondents argue that at the time of petitioner's trial in 1999, the *Kazalyn* instruction was a correct statement of Nevada law.  Respondents point out that, in considering petitioner's claim on his second direct appeal, the Nevada Supreme Court ruled that *Byford* has no retroactive effect in this case:  "*Byford* has no retroactive effect, and our conclusion on direct appeal that there was sufficient evidence of premeditated murder remains sound."  (Exhibit 113, at p. 7).  In the reply brief, petitioner cites to *Polk v. Sandoval*, but fails to address the *Nika* decision and the issue of retroactivity of the *Byford* rule.  (Docket #46, at pp. 8-11).

7

1    This Court finds that petitioner has failed to carry his burden of demonstrating that the

2    state court's ruling was contrary to, or involved an unreasonable application of, clearly established

3    federal law, as determined by the United States Supreme Court, or that the ruling was based on an

4    unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

5    As the Nevada Supreme Court found, the *Kazalyn* instruction was a proper statement of the law in

6    Nevada at the time it was given at petitioner's trial.  Further, even assuming that the *Byford* rule is

7    applied retroactively to petitioner's case, this Court is unconvinced that giving the *Kazalyn* instruction

8    at trial had a substantial and injurious effect or influence in determining the jury's verdict.  As such, any

9    error would have been harmless error under the *Brecht* standard.  The Court will deny habeas relief with

10   respect to Ground Two.

11   **C.  Ground Three**

12   Petitioner alleges: "Browne is in custody in violation of his right to due process pursuant

13   to the Fifth and Fourteenth Amendments to the United States Constitution because the evidence adduced

14   at trial was insufficient to prove murder in the first degree beyond a reasonable doubt."  (First Amended

15   Petition, Docket #19, at p. 13).

16   When a habeas petitioner challenges the sufficiency of evidence to support his or her

17   conviction, the court reviews the record to determine "whether, after viewing the evidence in the light

18   most favorable to the prosecution, any rational trier of fact could have found the essential elements of

19   the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*,

20   207 F.3d 557, 563 (9th Cir. 2000).  The court must assume that the jury resolved any evidentiary

21   conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at

22   326; *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (*en banc*).  The credibility of witnesses is

23   beyond the scope of the court's review of the sufficiency of the evidence. *See Schlup v. Delo*, 513 U.S.

24   298, 330 (1995).  Under the *Jackson* standard, the prosecution has no obligation to rule out every

25   hypothesis except guilt. *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S.

26

8

at 326;  *Schell*, 218 F.3d at 1023.  *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of evidence.  *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

Petitioner's claim of insufficiency of the evidence was reviewed and denied on the merits by the Nevada Supreme Court on direct appeal.  (Exhibit 53, at pp.11-12).  The Nevada Supreme Court cited to the appropriate federal standard, *Jackson v. Virginia*, which provides that the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The Nevada Supreme Court's recitation of the facts of the case on direct appeal included the following statement:

> Chantelle attempted to defend herself with her arms until Jason hit her with the bat in the ribs, and Chantelle's arms fell helplessly to her side. Jason paused and stated, "now it's time to call the police."  Jason then continued to hit Chantelle with the bat as she lay limp on the floor.

(Exhibit 53, at p. 3).  The Nevada Supreme Court specifically considered petitioner's insufficiency of the evidence claim, and found that a jury could reasonably conclude Browne's actions constituted first degree murder based on:  (1) Shaun's and Scottie's testimony that Jason stopped beating Chantelle, stated "Now it's time to call the police," and resumed the beating; (2) Shaun's and Nichole's testimony that shortly before the beating Chantelle screamed, "He's choking me" and "He's going to kill me"; (3) Scottie's testimony that during the beating, Jason paused, looked at Chantelle, and continued beating her despite the fact that she was not moving; and (4) Dr. Jordan's testimony regarding the extent of Chantelle's injuries."  (Exhibit 53, at pp. 11-12).  Based on state law defining first degree murder in Nevada at the time, the Nevada Supreme Court found that there was sufficient evidence to convict petitioner of first degree murder.  This Court has reviewed the state court record and finds that the Nevada Supreme Court applied the correct standard to the facts of the case and was reasonable in its decision to sustain petitioner's convictions.  The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling

9

1    was contrary to, or involved an unreasonable application of, clearly established federal law, as

2    determined by the United States Supreme Court, or that the ruling was based on an unreasonable

3    determination of the facts in light of the evidence presented in the state court proceeding.  This Court

4    will deny habeas relief as to Ground Three.

5        **D.  Ground Four**

6            Petitioner alleges: "Browne was denied his right to confront witnesses guaranteed by the

7    Sixth Amendment to the United States Constitution when the district court erroneously admitted hearsay

8    statements of the victim Chantelle Browne through witness Claude Goode." (First Amended Petition,

9    Docket #19, at p. 13).  Petitioner argues that there were two instances where the district court improperly

10   allowed Claude Goode to give an opinion of Chantelle and petitioner's marriage because it was based

11   on his conversations with Chantelle, rather than on Goode's personal knowledge.  The trial judge

12   allowed the testimony, applying the present sense impression exception to the hearsay rule.

13           Federal habeas corpus relief is generally not available to review questions regarding the

14   admissibility of evidence in state court.  *Estelle v. McGuire*, 502 U.S. 62 (1991).  The relevant inquiry

15   is whether the evidence was so prejudicial that its admission violated fundamental due process and the

16   right to a fair trial.  *Fuller v. Roe*, 182 F.3d 699, 703 (9th Cir. 1999).  Regarding Goode's statements, the

17   Nevada Supreme Court held that, while the statements in question did not fall within the "present sense

18   impression" exception, they were nevertheless admissible because they were not offered for the truth of

19   the matter asserted.  The Nevada Supreme Court cited *Shults v. State*, 96 Nev. 742, 747-48, 616 P.2d

20   388, 392 (1980), which held that "out-of-court statements may be used as foundation for a non-hearsay

21   purpose so long as the substance of those statements is not revealed to the jury." (Exhibit 53, at p. 8).

22   The Nevada Supreme Court ruled that Chantelle's out of court statements were used for the limited

23   purpose of establishing Goode's basis for his opinion that petitioner and Chantelle's marriage was

24   troubled.  The Nevada Supreme Court then held that, even if these statements were improper, they "did

25

26

10

1 little to convince the jury that Jason committed first degree murder; therefore, any potential error was

2 harmless." (Exhibit 53, at p. 9).

3        The Nevada Supreme Court also considered the issue of Chantelle's statements to Goode

4 that she was afraid that petitioner was going to kill her. The Court ruled that these statements were

5 improperly admitted, but that after a harmless error analysis, the Nevada Supreme Court concluded that

6 reversal of the conviction was not warranted. (Exhibit 53, at pp. 9-10). The factual findings of the state

7 court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving

8 that the state court's ruling was contrary to, or involved an unreasonable application of, clearly

9 established federal law, as determined by the United States Supreme Court, or that the ruling was based

10 on an unreasonable determination of the facts in light of the evidence presented in the state court

11 proceeding. This Court will deny habeas relief as to Ground Four.

12      **E. Ground Five**

13        Petitioner alleges: "The trial court erred in admitting gruesome autopsy photographs when

14 the photographs were highly inflammatory and more prejudicial than probative of any contested issue.

15 As a result, Browne's Fifth and Fourteenth Amendment constitutional rights to due process were

16 violated." (First Amended Petition, Docket #19, at p. 16).

17        While claims or error from an allegedly erroneous admission of photographs will not state

18 a federal claim, a claim of violation of due process may arise from the introduction of gruesome

19 photographs of the victim. *Batchelor v. Cupp*, 693 F.2d 859 (9th Cir. 1982). However, reversal will not

20 occur unless the trial is rendered fundamentally unfair as a result of the introduction of the photographs.

21 *Id.* Admission rests largely in the discretion of the trial court. *Id.* The Ninth Circuit has ruled that a

22 claim of erroneous admission of gruesome photographs is not cognizable and does not raise the specter

23 of fundamental unfairness. *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997). This Court may

24 consider whether the admission of evidence so infected petitioner's trial with unfairness as to render the

25 verdict a denial of due process. *See Romano v. Oklahoma*, 512 U.S. 1, 12 (1994).

26

1    In the instant case, the Court cannot say that the introduction of the autopsy photographs

2 so infected the trial with unfairness as to render the verdict a denial of due process.  The Nevada

3 Supreme Court considered the photographs and held that "the admission of the photographs lies within

4 the sound discretion of the district court.  Absent an abuse of discretion, we will not reverse that

5 admission." (Exhibit 53, at p. 10).  The Nevada Supreme Court noted that the district court observed

6 all the photographs that the prosecution sought to enter and decided that the prejudice of some

7 photographs outweighed their probative value, and therefore, the district court excluded those

8 photographs.  However, the district court found that the particular photographs at issue in the appeal,

9 which were admitted into evidence, were extremely probative, and the probative value was not

10 substantially outweighed by prejudice.  (Exhibit 53, at p. 11).  The factual findings of the state court are

11 presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the

12 state court's ruling was contrary to, or involved an unreasonable application of, clearly established

13 federal law, as determined by the United States Supreme Court, or that the ruling was based on an

14 unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

15 This Court will deny habeas relief as to Ground Five.

16    **F.  Ground Six**

17    Petitioner alleges: "Browne is in custody in violation of his right to effective assistance

18 of trial and appellate counsel as guaranteed by the Sixth and Fourteenth Amendments to the United

19 States Constitution." (First Amended Petition, Docket #19, at p. 17).  Subpart (a) alleges: "Trial counsel

20 failed to investigate, consult, produce or offer psychological evidence during Browne's trial."  (*Id.*).

21 Subpart (b) alleges: "Trial counsel failed to present any mitigation evidence at Browne's sentencing

22 hearing.  (*Id.*, at p. 19).  Subpart (c) alleges: "Appellate counsel, Figler, failed to consult and discuss

23 the appeal with Browne."  (*Id.*, at p. 20).

24    Ineffective assistance of counsel claims are governed by the two-part test announced in

25 *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a petitioner

26

claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

### 1. Ground Six, Subpart A

Petitioner claims that trial counsel (David Schiek and William Wolfbrandt) were ineffective for failing to present evidence of his mental infirmities during the guilt phase of his trial. Petitioner argues that Brown was evaluated by several doctors to determine whether he was competent to stand trial. Petitioner argues that, although he was found competent, several of the doctors' reports

13

discussed petitioner's mental and emotional problems. Petitioner contends that such information was not presented to the jury during the guilt phase of trial, due to counsel's ineffectiveness. Petitioner claims that: "Counsel's failure to present Browne's mental condition as a defense assured the jury would find him guilty of first degree murder." (First Amended Petition, Docket #19, at pp. 18-19).

The Nevada courts considered the issue that petitioner now raises, and found that trial counsel were not ineffective. Specifically, the state district court granted in part, and denied in part, petitioner's first state habeas petition, concluding that counsel were not ineffective in making a tactical decision not to present psychological testimony during the guilt phase of trial. (Exhibit 72, at p. 3). In the same ruling, the district court found that petitioner's attorneys were ineffective for failing to present mitigation evidence during the penalty phase. (Exhibit 72, at p. 3). The Nevada Supreme Court affirmed the district court's ruling as to both issues. (Exhibit 82). As noted by the Nevada Supreme Court, petitioner's counsel made an independent inquiry into petitioner's mental condition, having Dr. Jack Jurasky, M.D., and Harrie Hess, Ph.D, examine petitioner. (Exhibit 82, at p. 3). The Nevada Supreme Court noted that, "by the time of trial, Dr. Jurasky had changed his earlier opinion that Browne was unable to premeditate the murder, and he and other mental health experts believed that Browne was likely malingering." (Exhibit 82, at p. 3). The Nevada Supreme Court concluded:

> The district court found that Browne's counsel made a tactical decision "not to pursue the area of Defendant's mental capacity at the guilt phase." Browne's trial counsel testified at the post-conviction evidentiary hearing that they made a tactical decision not to call Dr. Jurasky to testify in the guilt phase after they learned on the eve of trial that Dr. Jurasky's testimony would differ substantially from the anticipated psychological testimony counsel had initially expected him to provide. In light of the highly deferential review that must be accorded to counsel's representation, we conclude that under the circumstances counsel's strategic, tactical decision did not fall below an objective standard of reasonableness.

(Exhibit 82, at p. 3). The Nevada Supreme Court further held that Browne could not show the requisite prejudice based on counsel's failure to present psychological evidence during the guilty phase of trial, because "[t]he State was prepared to present persuasive evidence of Browne's malingering, which would

have impeached the reliability and undermined the impact of any psychological evidence defense counsel might have presented." (Exhibit 82, at p. 4). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court will deny habeas relief as to subpart A of Ground Six.

### 2. Ground Six, Subpart B

Petitioner argue that his attorneys, Anthony Sgro and Christopher Oram, were ineffective at his second sentencing hearing, which was held on August 20, 2004 (Exhibit 104). Petitioner complains that counsel failed to object to a State's witness who referred to petitioner as a child molester. Petitioner also complains that counsel failed to object to the State's argument that it would be a "disservice to this community" to impose anything less than life without the possibility of parole. Petitioner further contends that, other than making passing reference to petitioner's mental difficulties, counsel failed to present or argue evidence of petitioner's psychological problems. (First Amended Petition, Docket #19, at pp. 19-20).

The second sentencing hearing, held on August 20, 2004, was presided over by Judge Michael A. Cherry, the same state district judge that presided over trial. (See Exhibit 104). Judge Cherry had access to all relevant information, including all psychological reports concerning petitioner. Even assuming that counsel's performance was deficient, petitioner has not shown that such deficient performance prejudiced the defense. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). The district judge presiding over the sentencing hearing had heard and/or reviewed all information pertaining to petitioner's mental or psychological status, and further argument on the same would not

have changed the outcome of the sentencing proceeding.  Moreover, counsel's failure to make objections to the "child molester" comment of a witness and the State's "disservice to this community" argument would not have a prejudicial impact on the judge such that the result of the proceeding would have been different.

Counsel's performance at the sentencing hearing on August 20, 2004, did not fall beyond an objective standard of reasonableness under prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he has not shown that, but for the alleged errors of counsel, the outcome of the proceeding would have been different.  Petitioner's counsel was not ineffective and this Court will deny habeas relief with respect to subpart B of Ground Six.

### 3. Ground Six, Subpart C

Petitioner alleges that his appellate counsel, Dayvid Figler, failed to consult with petitioner during his second direct appeal.  (First Amended Petition, Docket #19, at pp. 20-21).  Petitioner's allegations are conclusory.  Conclusory allegations of counsel's alleged deficiencies absent any specifics to identify precisely how counsel failed to fulfill his obligations are insufficient to support an ineffectiveness claim.  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).  Even assuming that appellate counsel Figler had inadequate contact with petitioner regarding his second direct appeal, petitioner has failed to meet the prejudice prong of the *Strickland* analysis, as he has not shown that, but for the alleged errors of counsel, the outcome of the proceeding would have been different.  Petitioner's counsel was not ineffective and this Court will deny habeas relief with respect to subpart C of Ground Six.

### G. Ground Seven

Petitioner alleges: "Browne is in custody in violation of his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution as his sentencing plea was not entered knowingly, intelligently, and voluntarily." (First Amended Petition, Docket #19, at p. 21).  After the Nevada Supreme Court affirmed the decision of the state district court to hold a new penalty phase hearing, the hearing did not occur, but rather, a plea agreement was entered

into, whereby the State agreed to set aside the death penalty in return for petitioner's agreement to be sentenced to either life with the possibility of parole, or life without the possibility of parole. Petitioner contends that, because there were several psychological evaluations suggesting that petitioner is mentally retarded, he was not competent to enter a plea regarding sentencing. Petitioner contends that the trial court's canvass was inadequate to show that petitioner knew and understood the consequences of the plea agreement.

To be valid, a guilty plea must be knowing, voluntary, and intelligent. *U.S. v. Brady*, 397 U.S. 742, 748 (1970). A guilty plea must represent a voluntary and intelligent choice among alternative courses of action open to a defendant. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985). Advice for a guilty plea does not require a description of every element of the offense. *Bargas v. Burns*, 179 F.3d 1207, 1216 (9th Cir. 1999) (citation omitted). The court looks to what a defendant reasonably understood at the time of the plea. *U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986).

The plea agreement between petitioner and the State was memorialized in a sentencing agreement between the parties. (Exhibit 103). Petitioner was canvassed by the court and agreed to waive his right to a jury for the penalty phase. (Exhibit 102). In its discussion of the plea agreement and the district court's canvass of petitioner, the Nevada Supreme Court noted that: "In explaining why it was allowing the sentencing agreement to take effect, the district court cited various mental health reports indicating that Browne had repeatedly feigned mental problems attempting to avoid prosecution and punishment for the murder." (Exhibit 113, at pp. 3-4). The Nevada Supreme Court found that "we perceive no inadequacy in the canvass conducted by the district court." (Exhibit 113, at p. 5). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground Seven.

**H.  Ground Eight**

Petitioner alleges: "Browne's sentence of life without the possibility of parole is excessive in violation of the Eighth Amendment to the United States Constitution."  (First Amended Petition, Docket #19, at p. 24).  The Eighth Amendment prohibits grossly disproportionate sentences.  *Lockyer v. Andrade*, 528 U.S. 63, 71-73 (2003).  The Nevada Supreme Court addressed the Eighth Amendment issue in this case and held that "a sentence within the statutory limits is not cruel and unusual punishment if the statute itself is constitutional and the sentence is not so disproportionate as to shock the conscience."  (Exhibit 113, at pp. 6-7).  NRS 200.030(4)(b)(1) provides that an individual convicted of first degree murder can be sentenced to life without the possibility of parole.  The Nevada Supreme Court quoted its prior finding on direct appeal that petitioner's death sentence was not excessive, "considering the senseless and violent nature of the crime and the defendant," and concluded that petitioner's sentence of life without the possibility of parole was also not cruel and unusual.  (Exhibit 113, at pp. 7-8, internal citation to Exhibit 53, at p. 15).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground Eight.

**IV.  Certificate of Appealability**

In order to proceed with any appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**V. Conclusion**

IT IS THEREFORE ORDERED that the amended petition for a writ of habeas corpus (Docket #19) is **DENIED IN ITS ENTIRETY**.

IT IS FURTHER ORDERED that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

IT IS FURTHER ORDERED that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this 19th day of October, 2010.

_____
UNITED STATES DISTRICT JUDGE

19